IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REGINALD D. SEASTRUNK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:16-cv-2795-S-BN |
| | § | |
| ENTEGRIS, INC., | § | **FILED CONDITIONALLY** |
| | § | **UNDER SEAL** |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Reginald D. Seastrunk, now proceeding *pro se*, filed this action against his former employer, Defendant Entegris, Inc., alleging that he was discriminated against on the basis of his race (African American) and retaliated against, in violation of Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. § 1981; and Chapter 21 of the Texas Labor Code.

Prior to the Court allowing Mr. Seastrunk's counsel to withdraw, *see* Dkt. No. 56, Entegris moved for summary judgment as to Mr. Seastrunk's claims, *see* Dkt. Nos. 32, 33, 34, 35, & 36. Mr. Seastrunk responded through counsel, *see* Dkt. Nos. 37, 38, 42, & 47, and Entegris filed a reply brief, *see* Dkt. Nos. 44, 45, 46, & 48.

On August 14, 2018, United States District Judge Karen Gren Scholer referred this action to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. No. 58.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion for summary judgment and

dismiss this action with prejudice.

## Applicable Background

Mr. Seastrunk began work in November 2013 as a Project Manager in the New Products Group ("NDP") at Entegris's POCO facility in Decatur, Texas. He was hired by and reported to Manny Gonzales, Director of New Product Development. In March 2016, Mr. Gonzales placed Mr. Seastrunk on a Performance Improvement Plan ("PIP"). And, on April 25, 2016, Mr. Gonzales terminated Mr. Seastrunk's employment.

Mr. Seastrunk alleges discrimination based on his being (1) placed on the PIP, (2) prevented from transferring from the NDP Group, and (3) terminated and further alleges that he was retaliated against based on his response to the PIP – that is, that response constituted protected activity under Title VII.

## Legal Standards

I.  Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of

the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux*

*v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

"After the nonmovant has been given an opportunity to raise a genuine factual

issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

II. <u>Discrimination and Retaliation</u>

"Title VII prohibits discrimination 'because of' a protected characteristic, including race." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216, 219 (5th Cir. 2016) (citing 42 U.S.C. § 2000e-2(a)(1)). That statute similarly prohibits retaliation because an employee engages in protected activity. *See* 42 U.S.C. § 2000e-3(a); *Starnes v. Wallace*, 849 F.3d 627, 635 (5th Cir. 2017) ("[T]he ultimate question in a retaliation case [is] 'whether the defendant discriminated against the plaintiff *because* the plaintiff engaged in' protected conduct." (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996); emphasis in *Long*)).

And that Mr. Seastrunk – in addition to invoking Title VII – also brings his claims under Section 1981 and Chapter 21 does not alter the Court's approach to his discrimination and retaliation claims. *See, e.g.*, *Khalfani v. Balfour Beatty Communities, L.L.C.*, 595 F. App'x 363, 365 n.1 (5th Cir. 2014) (per curiam) ("Khalfani brought both his race and color discrimination claim and his retaliation claim pursuant to Chapter 21 of the Texas Labor Code and 42 U.S.C. § 1981. The legal framework governing claims under both statutes is the same as for claims brought under Title VII." (citations omitted)).

In the absence of direct evidence of discrimination or retaliation, claims under Title VII are analyzed under the framework set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Outley*, 840 F.3d at 216, 219. Under this framework, a plaintiff must establish a prima facie case of discrimination or retaliation before the case may proceed. *See McCoy*, 492 F.3d at 556.

To establish a prima facie claim of discrimination, a plaintiff must show that he

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Id.* at 556 (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)); *Outley*, 840 F.3d at 216.

"[T]he third prong ... require[s] an 'ultimate employment decision' or its factual equivalent." *Brooks v. Firestone Polymers, L.L.C.*, 640 F. App'x 393, 396-97 (5th Cir.

2016) (per curiam) (citing *McCoy*, 492 F.3d at 560; *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014)). This "judicially-coined term refer[s] to an employment decision that affects the terms and conditions of employment ... such as hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson*, 764 F.3d at 503 (citations omitted); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006) (holding that the anti-discrimination provision of Title VII "explicitly limit[s] the scope of that provision to actions that affect employment or alter the conditions of the workplace").

And a plaintiff establishes a prima facie case of retaliation under Title VII by showing that (1) he engaged in an activity protected under the statute; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *See McCoy*, 492 F.3d at 557; *Outley*, 840 F.3d at 219.

> If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action. The employer's burden is only one of production, not persuasion, and involves no credibility assessment. If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer.

*McCoy*, 492 F.3d at 557 (footnotes omitted); *see, e.g., Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 827-28 (5th Cir. 2015) (affirming the district court's recognition that, even where a plaintiff establishes a prima facie case, an employer "would nevertheless be entitled to summary judgment if it 'articulated a legitimate,

nondiscriminatory ... reason for its employment action' and [the plaintiff] could not show a triable issue of fact as to whether 'the employer's proffered reason is not true but instead is a pretext' for a discriminatory purpose" (quoting *McCoy*, 492 F.3d at 557; original brackets omitted)).

## Analysis

I.  Racial Discrimination

If the Court accepts that Mr. Seastrunk has established the first three prima-facie-case requirements – that he, as "a member of a protected class" who "was qualified for the position at issue," suffered an adverse employment action – Mr. Seastrunk still has not established the fourth requirement by showing that he "was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 556.

Focusing first on the replacement prong of this requirement, Mr. Seastrunk argues that "he was replaced by someone outside the protected class in that Entegris hired Robert Anderson, Caucasian, to perform some of Seastrunk's job duties." Dkt. No. 38 at 34 (citing deposition and discovery responses indicating that Mr. Gonzales "assumed Plaintiff's job duties following Plaintiff's termination"; that, "[b]eginning in 2017, Robert Anderson (Caucasian, Senior Design Engineer) assumed some of the tasks related to glass forming from Gonzales"; and that "Anderson was hired on November 28, 2016" (quoting Dkt. No. 39-4 at 137)).

But, as to Mr. Gonzales's assuming Mr. Seastrunk's job duties upon his

termination, "when an employee's position has been eliminated and the job duties reassigned to existing employees, that employee has not been replaced." *Dulin v. Dover Elevator Co.*, 139 F.3d 898, 1998 WL 127729, at *3 (5th Cir. 1998) (citing *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 423 (1st Cir. 1996); *Barnes v. GenCorp., Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990); *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 150 (5th Cir. 1995)); *see also Rexses v. Goodyear Tire & Rubber Co.*, 401 F. App'x 866, 868 (5th Cir. 2010) (per curiam); *Griffin v. Kennard Indep. Sch. Dist.*, 567 F. App'x 293, 294-95 (5th Cir. 2014) (per curiam); *but see Howard v. United Parcel Serv.*, 447 F. App'x 626, 629 n.2 (5th Cir. 2011) (per curiam) ("While this court has acknowledged differences between job 'replacement' and 'elimination' cases, those distinctions are more clearly applicable when the case involves layoffs or employer-planned reductions in force as opposed to the elimination of the single job at issue."); *cf. Bilbrew v. Miss. Bd. of Nursing*, No. 3:17-CV-346-DCB-LRA, 2018 WL 3405504, at *2-*3 (S.D. Miss. July 12, 2018) (noting that "the Fifth Circuit has produced few precedential opinions" as to this issue but, after considering the "three unpublished opinions explor[ing] Title VII reassignment" – *Griffin*, *Rexses*, and *Dulin* – choosing to apply *Griffin*, which the court characterized as "suggest[ing] that an employee is not replaced when his duties are reassigned to existing employees, even though his former position has not been eliminated").

Further, the hiring of Mr. Anderson some 7 months after Mr. Seastrunk was terminated – not into Mr. Seastrunk's former position, *see, e.g.*, Dkt. No. 36 at 204-05 of 396 (testimony confirming that Mr. Anderson had a different title (design engineer)

-9-

and different responsibilities generally ("working more technical, creation of drawings and specifications"), but rather to ultimately assume (months after his hiring) some duties that Mr. Seastrunk performed – also does not satisfy the replacement prong of the fourth requirement. First, as the court in *Bilbrew* explained,

> [a] Title VII plaintiff fails to create a material fact issue on the replacement element of her prima facie case when she points only to an "ultimate" replacement outside her protected class. *See Kirschling v. Atlantic City Bd. of Educ.*, 10 F. Supp. 3d 587, 597 (D.N.J. 2014). In *Kirschling*, for example, the district court determined that the plaintiff failed to create a material fact issue regarding the replacement element of his claim when he was initially replaced by someone of his race. *Id.* at 597. That the plaintiff's "ultimate" replacement, hired more than one year after the plaintiff was fired, was of another race failed to create an inference of discrimination. *Id.* So too here. The Board hired Highfill more than one year after it fired Bilbrew. Given the passage of time between its firing and hiring decisions, no inference of discrimination can be drawn.

*Bilbrew*, 2018 WL 3405504, at *3.

And, while Mr. Anderson was hired less than one year after Mr. Seastrunk was terminated, he was not hired as a project manager and assumed just one of Mr. Seastrunk's former responsibilities – and not until months after he was hired. *Cf. Claiborne v. Recovery Sch. Dist.*, 690 F. App'x 249, 256-57 (5th Cir. 2016) (per curiam) (holding that the fourth requirement is not proven where alleged replacement had different job title and did not perform "the same job duties").

Mr. Seastrunk alternatively posits that he has shown the fourth requirement by identifying proper comparators – individuals of a different race than him "under nearly identical circumstances" who were treated more favorably. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009); *see also Wright v. Chevron Phillips Chem.*

*Co., L.P.*, ___ F. App'x ____, No. 17-20642, 2018 WL 2472953, at *3 (5th Cir. June 1, 2018) (per curiam) ("Both the comparator and the conduct must be 'nearly identical' (except for the protected characteristic) to the person and situation in question yet the two yielded dissimilar results." (quoting *Outley*, 840 F.3d at 217-18 (quoting, in turn, *Lee*, 574 F.3d at 260))).

He argues that two Caucasian project managers at POCO, Rob Fothergill and Greg Scherer, "were treated more preferentially than [him], as they had significant errors without being terminated" – for example, "Fothergill was allowed to transfer to an EDM applications engineering position, no longer reporting to Gonzales," and both "were not assigned numerous white papers to complete like Seastrunk." Dkt. No. 38 at 34-35 (citations omitted). "Yet it was Seastrunk [who] was put on a PIP ... while Fothergill and Scherer were not put on PIPs despite significant failures on projects, some exhibited performance deficiencies, and similar performance review scores." *Id.* at 35 (citations omitted).

"[C]ritically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis." *Lee*, 574 F.3d at 260 (quoting, first, *Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 213 (5th Cir. 2004), and then *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001); emphasis added in

*Lee*; footnotes omitted); *accord Moore v. Univ. Miss. Med. Ctr.*, 719 F. App'x 381, 386-87 (5th Cir. 2018); *see also Noble v. Lear Siegler Svcs., Inc.*, 554 F. App'x 275, 276 (5th Cir. 2014) (per curiam) (rejecting an African-American plaintiff's claim that he established this prima facie element by asserting that "five Caucasian men in his unit kept their jobs" because he failed to "show that these comparators were under 'nearly identical circumstances'" by presenting "evidence regarding the comparators' job descriptions, qualifications, experience, work and disciplinary history, or other information that would indicate that they were similarly situated" (quoting *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001))); *Reyna v. Donley*, 479 F. App'x 609, 611-12 (5th Cir. 2012) (per curiam) ("An employee must proffer a comparator who was treated more favorably 'under nearly identical circumstances,' which is satisfied when 'the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.'" (quoting *Lee*, 574 F.3d at 260)).

Here, one of the performance issues articulated in Mr. Seastrunk's PIP was a February 2016 "email exchange with the manufacturing team in which [his] comments were taken as unprofessional." Dkt. No. 36 at 96 of 396. As Mr. Gonzales recounted in the PIP, "I asked you to reconsider your comments then you asked to removed from the tram versus accepting my guidance. You subsequently offered your resignation, which indicated to me that you are struggling with the culture of Entegris and the expectations of professional interaction." *Id.*; *see also id.* at 97 (indicating that this was

one of the "performance issues" that led to Mr. Seastrunk "being placed on a written performance improvement plan").

Neither alleged comparator exhibited unprofessional conduct similar to Mr. Seastrunk's. As such, neither has an essentially comparable violation history, such that either's conduct can be considered "nearly identical" to Mr. Seastrunk's. *See, e.g.*, *Brockie v. Ameripath, Inc.*, No. 3:06-cv-185-G, 2007 WL 1187984, at *13 (N.D. Tex. Apr. 23, 2007) (determining that the plaintiff's failure to "offer evidence that [the male] comparators were engaged in the same types of unprofessional conduct as she was" was fatal to her prima facie case); *Hawkins v. Noland Health Servs., Inc.*, No. 2:11-cv-0371-TMP, 2012 WL 6609011, at *5 (N.D. Ala. Dec. 14, 2012) ("There is no evidence before the court that Jones engaged in unprofessional conduct.... In the absence of evidence that Jones' record is 'nearly identical' to plaintiff's, she is not a valid comparator."); *see also Bennett v. Chatham Cty. Sheriff Dept.*, 315 F. App'x 152, 159 (11th Cir. 2008) (per curiam) (holding that the plaintiff failed to identify a sufficient comparator because the alleged comparator's misconduct was not "sufficiently similar in quality or quantity for him to constitute a similarly situated employee" because, although both employees engaged in unprofessional conduct, "the circumstances surrounding their misconduct differed").

Because Mr. Seastrunk cannot establish a prima facie claim of race discrimination, Entegris is entitled to judgment as a matter of law as to this claim.

II.   <u>Retaliation</u>

A prima facie claim of retaliation requires that a plaintiff first show that he

participated in a statutorily-protected activity. *See McCoy*, 492 F.3d at 557; *Outley*, 840 F.3d at 219. And "[t]he Fifth Circuit has made plain that 'a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute a protected activity.'" *Obondi v. UT Sw. Med. Ctr.*, No. 3:15-cv-2022-B, 2017 WL 2729965, at *13 (N.D. Tex. June 23, 2017) (quoting *Paske v. Fitzgerald*, 785 F.3d 977, 986 (5th Cir. 2015) (quoting, in turn, *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (per curiam) (collecting cases))). Therefore, "[a]ctivities such as filing internal grievances or memos, or otherwise complaining internally, do not amount to protected activity under Title VII when activities protected under Title VII are not specifically referenced." *Von Graupen v. Burlington Coat Factory of Tex., L.P.*, No. 4:11-cv-868-A, 2013 WL 1143359, at *9 (N.D. Tex. Mar. 19, 2013) (citations omitted); *see also Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (per curiam) (noting that "Title VII protects only opposition to discrimination based on 'race, color, religion, sex, or national origin.'" (quoting 42 U.S.C. § 2000e-2(a)(1)).

"Magic words are not required, but protected opposition must at least alert an employer to the reasonable belief that unlawful discrimination is at issue." *Brown*, 406 F. App'x at 840. Put another way, "a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Davis*, 448 F. App'x at 493 (collecting cases); *see also EEOC v. Omni Hotels Mgmt. Corp.*, 516 F. Supp. 2d 678, 705-06 (N.D. Tex. 2007) ("Vague concerns and even vague assertions of discrimination are not sufficient to constitute an opposition to an

unlawful employment practice." (collecting cases)).

For example, even invoking what some could argue are "magic words" – by complaining that a supervisor "created a 'hostile work environment'" – "does not itself constitute 'protected activity' within the meaning of Title VII, [if the] complaint lack[s] a racial or gender basis." *Davis*, 448 F. App'x at 493 (citing 42 U.S.C. § 2000e-3(a)); *compare, e.g.*, *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007) ("Because Turner could not have reasonably believed that Colston's conduct described in the email constituted an unlawful employment practice under Title VII, this incident cannot give rise to protected activity. Accordingly, Turner fails to make a prima facie showing of unlawful retaliation." (citations omitted)); *Jackson v. Dallas Cty. Juvenile Prob. Dep't*, No. 3:06-cv-264-M-BH, 2007 WL 2187250, at *10 (N.D. Tex. July 30, 2007) (finding that memos that alluded to harassment that did not contain details regarding any factor to which Title VII is applicable were not protected activities), *with Von Graupen*, 2013 WL 1143359, at *10 ("Plaintiff contends that she called defendant's 'Integrity Hotline' and stated that she was threatened with the loss of her job if she did not improve her spoken and written English, but admits that she did not mention her age, sex, but did mention that she was Hispanic, during the conversation. Defendant argues that this phone call by plaintiff was insufficient to put defendant on notice that plaintiff was complaining about discrimination, but plaintiff argues that it clearly implicates discrimination based on national origin because her proficiency in communication was discussed and questioned, and she states that she mentioned she was Hispanic. Thus, for purposes of this motion, the court will assume that plaintiff

participated in some form of protected activity.").

The activity allegedly protected by Title VII here is Mr. Seastrunk's March 2016 response to the PIP. *See* Dkt. No. 36 at 100-104 of 396. In that response, directed at Mr. Gonzales, Mr. Seastrunk asserts that Mr. Gonzales's "actions are in retaliation to me wanting to leave his group because of disproportional treatment and him not providing comparative treatment. He is denying me the opportunity to transfer. The combination of these two acts can be perceived as a violation of one's Civil Rights." *Id.* at 102 of 396; *see also id.* (further claiming that Mr. Gonzales "has created a hostile workplace environment forged by managerial intimidation and retaliation tactics").

While Mr. Seastrunk complains of a "hostile workplace" and "disproportional" and/or not "comparative treatment" and makes a vague reference to Civil Rights, he fails to express that it is his belief that he has been treated differently based on his race, color, religion, sex, or national origin – the attributes protected by Title VII. The complaints voiced in the rest of Mr. Seastrunk's response to the PIP similarly lack a racial or gender basis.

And, while he also includes an opaque reference to the Texas Attorney General and the Texas Workforce Commission Civil Rights Division, *see id.*, Mr. Seastrunk explains in his cover email that "the reason I mention the Office of the Attorney General is because of my child support order. And, I am about to review that order, I believe I must report this incident to them. The Assistant AG (Dallas) and I briefly touched on this a few years back before I started working for Entegris," *id.* at 101 of 396.

In sum, because Mr. Seastrunk's response to the PIP failed to alert Entegris to a reasonable belief that discrimination in violation of Title VII was at issue, Mr. Seastrunk has failed to establish a prima facie claim of retaliation, and Entegris is also entitled to judgment as a matter of law as to this claim.

## Recommendation

The Court should grant Defendant Entegris, Inc.'s motion for summary judgment [Dkt. No. 32] and dismiss this action with prejudice.

Finally, although these Findings, Conclusions, and Recommendation may not contain any confidential information, the undersigned will, out of an abundance of caution, conditionally enter them under seal because some of the underlying motion papers quoted above were filed under seal. And the parties are ORDERED to file a joint status report by **September 4, 2018** setting forth their views on whether the Findings, Conclusions, and Recommendation contain any confidential information – and, if so, where – and should therefore remain sealed.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 20, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE